Date: December 16, 2025
Time: 9:00 a.m.
Place: Portland
Objection deadline: December 9, 2025

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

```
* * * * * * * * * * * * * * * *
                              *
In re:                        *
                              *          Chapter 11
Cherished Land, LLC           *          Case No. 25-20220
                              *
        Debtor                *
                              *
* * * * * * * * * * * * * * * *
```

## MOTION TO DISMISS CASE

NOW COME Movants, David Lyon ("**Lyon**") and James L. Belt  ("**Belt**" and with Lyon, the "**Individual Guarantors**"), by and through their counsel, and move this Court for an order dismissing, for cause, the above-captioned case.  In support of that requested relief, the **Individual Guarantors** say as follows:

## BACKGROUND

### I.    The Franklin Savings Bank Debt.

1.      On or about May 12, 2023, Cherished Land, LLC (**"Debtor"** or "**CLL**"), executed and delivered to Franklin Savings Bank ("FSB") a Promissory Note (the **"FSB Note"**), the Note being a promise to pay $719,000.00 to Franklin Savings Bank or its order (the "**Loan**").  A true copy of the FSB Note is attached as **Exhibit A** to this Motion.

2.       The Note is secured by, and subject to, the terms and conditions of, among other things, a Mortgage, Security Agreement, and Financing Statement granted by CLL in favor of FSB, dated May 12, 2023, and recorded in the Cumberland County Registry of Deeds in Book 40125, Page 300 (the "**FSB Mortgage**"), encumbering certain real estate and improvements thereon

described in <u>Exhibit A</u> to the FSB Mortgage, said real estate being located generally at 64 Auburn Street, Portland, Maine, (the "**CLL Property**"). A true copy of the FSB Mortgage is attached as **Exhibit B** to this Motion.

3. Lyon unconditionally guaranteed CLL's payment and performance obligations under the FSB Note as evidenced by, *inter alia*, the Guaranty of David Lyon executed by, and delivered to, FSB on or about May 12, 2023 (the "Lyon FSB Guaranty"). A true copy of the Lyon FSB Guaranty is attached as **Exhibit C** to this Motion.

4. Belt unconditionally guaranteed CLL's payment and performance obligations under the FSB Note as evidenced by, *inter alia*, the Guaranty of James L. Belt executed by, and delivered to, FSB on or about May 12, 2023 (the "Belt FSB Guaranty"). A true copy of the Belt FSB Guaranty is attached as **Exhibit D** to this Motion.

## II. The Finance Authority of Maine Debt.

5. The CLL Property also serves as collateral for a certain Mortgage, Security Agreement, and Financing Statement executed and delivered to the Finance Authority of Maine ("**FAME**") on or about May 12, 2023, and given by CLL to secure its promises under that certain Note, of near or even date, in favor of FAME (the "**FAME Mortgage**"). The FAME Mortgage is recorded in the Cumberland County Registry of Deeds in Book 40125, Page 334. A true copy of the FAME Mortgage is attached as **Exhibit E** to this Motion.

## III. The Androscoggin Council of Governments Debt.

6. On or about May 16, 2023, CLL executed and delivered a certain commercial promissory note in the original principal amount of $50,000.00 (the "**AVCOG Note**") to Androscoggin Council of Governments ("**AVCOG**"). A true copy of the AVCOG Note is attached as **Exhibit F** to this Motion.

7.      The AVCOG Note is guaranteed by, among other parties, both Lyon and Belt. True and correct copies of the Lyon Guaranty and the Belt Guaranty are attached hereto as **Exhibit G** and **Exhibit H**, respectively.

8.      The Debtor defaulted on the AVCOG Note by, among other things, failing to make the monthly installment payment that came due thereunder on or about August 20, 2024, and all further payments.

9.      By letter dated June 5, 2025, AVCOG provided notice to, among other parties, the Individual Guarantors that the AVCOG Note was in default (the "AVCOG Note Defaults") and that these defaults needed to be cured.

10.     The AVCOG Defaults were not cured.

11.     On or about October 14, 2025, AVCOG filed a complaint against, *inter alia*, the Individual Guarantors under their respective guarantees of the AVCOG Note.

**IV.    The City of Portland's Property Tax Debt.**

12.     On or about June 27, 2025, the City of Portland recorded that certain State of Maine Tax Lien Certificate in the Cumberland County Registry of Deeds in Book 41544, Page 240 against the Property, which secures payment of the Debtor's property taxes for 2025 ("**2025 Property Tax Lien**") then in the amount of $18,640.17. A true and correct copy of the 2025 Property Tax Lien is attached as **Exhibit I** to this Motion. *See also*, Sch. D (scheduling City of Portland as the holder of a secured claim for property taxes in the amount of $18,000).

**V.     CLL's Default and FSB's Power of Sale Auction.**

13.     The Debtor defaulted under the FSB Note in that, among other things, it failed to make the monthly installment payments of principal and interest due thereunder on May 12, 2025, and all further payments (the "**FSB Note Defaults**").

14.     By letter dated June 25, 2025, FSB noticed the Debtor's defaults under the FSB Note and demanded that the Debtor cure those defaults within fifteen (15) days (the "**FSB Default Letter").**  A true copy of the FSB Default Letter is attached as **Exhibit J** to this Motion.

15.     The Debtor failed to cure the FSB Defaults as and when demanded in the FSB Default Letter.

16.     The Debtor's default under the FSB Note constitutes a breach of the condition of the FSB Mortgage. *See FSB Mortgage*, ¶ 14 (Default Remedies).

17.     By virtue of, and in execution of, the Power of Sale, and specifically the Statutory Power of Sale set forth in Titles 14 and 33 of the Maine Revised Statutes, and contained in the FSB Mortgage, FSB, for breach of the conditions of the FSB Mortgage and for the purpose of foreclosing the same, scheduled the CLL Property for Public Sale at 11:00 a.m. on September 12, 2025 (the "CLL Property Auction").  A true copy of FSB's Notice of Public Sale of Real Property of Cherished Land, LLC, is attached as **Exhibit K** to this Motion.

18.     The CLL Property Auction was stayed when the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on September 11, 2025.

## LAW AND ARGUMENT

**A.     THE COURT SHOULD DISMISS THIS CASE UNDER 11 U.S.C. § 1112(b).**

I.     The Dismissal Standard.

19.     The Court's authority for dismissing (or converting) a Chapter 11 case is found in § 1112(b), which provides, in relevant part that:

(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances

establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

    (A)    there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

    (B)    the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

        (i) for which there exists a reasonable justification for the act or omission; and

        (ii) that will be cured within a reasonable period of time fixed by the court.

§ 1112(b)(1)-(2).

20.    The Code does not define what constitutes "cause" for purposes of § 1112(b). Rather, it provides an illustrative list of conduct justifying dismissal. *See* § 1112(b)(4). Chapter 11 cases may be dismissed for reasons other than those enumerated in § 1112(b)(4). *In re Gonic Realty Tr.*, 909 F.2d 624, 626 (1st Cir. 1990).

21.    The movant bears the initial burden of establishing "cause" by the preponderance of the evidence. *In re Plaza Antillana, Inc.*, 2014 Bankr. LEXIS 634, *18, 2014 WL 585299 (Bankr. D.P.R. Feb. 14, 2014) (citing Alan N. Resnick & Henry J. Sommers, Collier on Bankruptcy ¶ 1112.04[4] (16th ed. 2013)). If the movant makes such a showing, the burden then shifts to the debtor, which is charged with identifying "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." *In re Plaza Antillana, Inc.*, 2014 Bankr. LEXIS 634, *18.

    II.    <u>Lack of Good Faith (or Bad Faith)</u>.

22.    Several Circuits have held that a Chapter 11 debtor's lack of good faith (or bad faith) in the filing of a Chapter 11 petition is cause for dismissal under § 1112(b). *See La Trinidad Elderly LP SE v. Lozia Ponce Holdings (In re La Trinidad Elderly LP SE)*, 627 B.R. 779, 799 (B.A.P. 1st Cir. 2021) (collecting cases). The First Circuit has not spoken definitively on the question, *see Fields*

*Station LLC v. Capitol Food Corp.* (*In re Capital Food Corp.*), 490 F.3d 21, 24 (1st Cir. 2007), but

its Bankruptcy Appellate Panel has been "persuaded" by the abundance of "well-reasoned authority"

holding that a lack of good faith when filing of a Chapter 11 petition is "cause" for dismissal under

§ 1112(b)(1), *In re La Trinidad Elderly LP SE*, 627 B.R. at 800.

23.    When the request for dismissal under § 1112(b) is predicated on lack of good faith,

the movant must make a *prima facie* showing thereof before shifting the burden to debtor to show

"unusual circumstances." *In re Capitol Food Corp.*, 490 F.3d at 24. Whether the movant has cleared

the *prima facie* showing threshold is a fact intensive inquiry requiring consideration of the totality

of the circumstances. *See, e.g., Farnsworth v. Morse (In re Farnsworth)*, 2009 Bankr. Lexis 3699,

*20, (B.A.P. 1st Cir. 2009) (citing *Marrama v. Citizens Bank of Mass.* (*In re Marrama*), 430 F.3d

474, 482 (1st Cir. 2005), aff'd *Marrama v. Citizens Bank*, 549 U.S. 365 (2007)). While this test

cannot be reduced to a "mechanical checklist," *Berliner v. Pappalardo* (*In re Puffer*), 674 F.3d 78,

81 (1st Cir. 2012), courts in the First Circuit have identified several indicia of bad faith (the "*PM

Cross Factors*"):

(1)    debtor has only one asset;

(2)    debtor has few unsecured creditors whose claims are small in relation to those claims held by secured creditors;

(3)    debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)    debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved outside of bankruptcy;

(5)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the secured creditor to enforce its rights;

(6)    the debtor has little or no cash flow;

(7)    the debtor cannot meet current expenses, including the payment of personal property and real estate taxes; and

(8)    the debtor has no employees.

*In re PM Cross, LLC*, 494 B.R. 607, 617 (Bankr. D.N.H. 2013). "Depending on the situation, one or another factor may have greater weight, and the number of factors on one side or the other of the balance is not, standing alone, determinative of the outcome." *In re Hartford & York, LLC*, 2014 Bankr. LEXIS 997, *11, 2014 WL 985449 (Bankr. E.D.N.Y. March 13, 2014).

24.    The *bona fides* of a Chapter 11 petition are considered against the backdrop of the primary purposes of the relief afforded thereby: (i) the preservation of businesses as going concerns, and (ii) the maximization of the assets recoverable to satisfy *unsecured claims*. *See In re Plaza Antillana, Inc.*, 2014 Bankr. LEXIS 634, at * 29 (citing *In re Capitol Food Corp.*, 490 F. 3d at 25) (emphasis added). Atypical conduct that furthers neither objective is an abuse of the bankruptcy process. *See In re Plaza Antillana, Inc.*, 2014 Bankr. LEXIS 634, at *20 (citing *Marrama v. Citizens Bank*, 549 U.S. at 375, fn. 11; *In re Puffer*, 674 F.3d at 82 (1st Cir. 2012).

III.    Application of Lack of Good Faith (Bad Faith) Standard.

25.    Here, application of the totality of the circumstances, including, without limitation, the *PM Cross Factors*, demonstrates that the Debtor failed to file its petition in good faith.

a.    *Single Asset Debtor*

26    It is beyond principled dispute that there is only one primary asset of the Debtor's estate: the Property. Indeed, the Debtor, by its own admission, is a Single Asset Real Estate debtor within the meaning of § 101(51B) of the Code. *See* ECF NO. 1, Voluntary Petition, p. 2.

b.    *De Minimis Unsecured Claims in Comparison to Secured Claims*

27.    While the Debtor has scheduled $306,129.43 in unsecured claims, that amount is *de minimis* in comparison to secured claims, which, according to the Debtor's own schedules, total $1,235,274.87. *Compare* Sch. D *with* Sch. E/F. Moreover, most of the unsecured debt is owed to insiders. The unsecured claim, held by CP Westbrook is 98.00% of the general unsecured claim pool. Samuel F. Eakin ("Mr. Eakin") signed the bankruptcy petition on behalf of the Debtor. He is

now, or was at the time of the CP Westbrook Loan, also the sole member of CP Westbrook. *See* CP

Westbrook Resolution, LLC dated May 12, 2023, a true and correct copy of which is attached as

**Exhibit L** and made a part hereof. CP Westbrook, in turn, is a non-statutory insider, given that the

CP Westbrook Loan was not arm's length as both the borrower—CPL—and the lender—CP

Westbrook—were controlled by Mr. Eakin at the time that the loan was made. *See U.S. Bank, N.A.*

*v. Village at Lakeridge, LLC*, 583 U.S. 387, 390 (2018). Accordingly, the CP Westbrook Loan—a

loan that disadvantaged other creditors and interested parties—should be discounted significantly, if

not completely, when considering this factor.  *In re State Street Houses, Inc.*, 305 B.R. 726, 735

(Bankr. S.D. Fla. 2003), *aff'd* 356 F.3d 1354 (11th Cir. Jan. 15, 2025) (collecting cases holding that

insider claims are disregarded under this prong of the bad-faith analysis).

28.    When CP Westbrook's insider claim is removed from the calculus, the unsecured

claims pool drops to $6,129.43, an amount that pales in comparison to nearly $1.3 Million in

scheduled secured claims. *Compare* Sch. D *with* Sch. E/F.  In other words, a review of the schedules

reveals that the non-insider unsecured claims comprise 2.00% of the claims' pool, while the secured

creditors, all of which are secured by the Property, comprise 98.00% of the pool.

29.    The discrepancy between the unsecured creditors and the secured creditors is more

glaring when considering the dearth of the assets of the estate generally and the complete lack of

assets in the estate available for unsecured creditors. As noted above, the only asset of meaningful

value is the Property, an asset that the Debtor values at $1.50 Million—a gross overvaluation given

the lack of interest at that price prior to the bankruptcy filing—but that asset is subject to

encumbrances totaling nearly $1.3 Million. *See* Sch A/B & Sch. D.  Even if there were substantial

unsecured creditors, there is little, if any, possibility that those creditors receive more than a *de*

*minimis* dividend.

30.     Based on the foregoing, the motivation in filing this case is not altruistic concern for unsecured creditors, which are effectively out of the money. Rather, the singular purpose of this case is to hold FSB, the other secured lenders, and their respective collateral hostage, while the Debtor seeks to maximize the value of Property principally, if not exclusively, for the economic benefit of Mr. Eakin.

31.     Here, the secured lenders should not be stayed from enforcing their respective rights in and to the Property, when, as appears to be the case here, the benefit of the filing to the unsecured creditors is *de minimis* at best. To the contrary, bad faith is found when the purpose of the bankruptcy filing is to "hold a single asset hostage in order to speculate that such an asset may increase in value [leading] to recover[y of the] original investment at the creditor's risk." *In re Generation Zero Group, Inc.*, 21 Bankr. LEXIS 179, *7, 2021 WL 267812 (Bankr. W.D.N.C. Jan. 26, 2021) (*quoting Carolin Corp. v. Miller*, 886 E.2d 693, 705 (4th Cir. 1989) (alterations in original)).  Such as the case here.

c.      *Pending Foreclosure*

32.     The Property was pending foreclosure, as of the Petition Date, because of debt servicing defaults by the Debtor.  *See FSB's Notice of Public Sale of Real Property of Cherished Land, LLC.*  This factor counsels in favor of dismissal.

d.      *Two-Party Dispute*

33.     This case is, in essence, a foreclosure dispute between the Debtor and FSB.  The Debtor's financial difficulties relate principally, if not exclusively, to its ongoing dispute with FSB. While the Debtor has other creditors, some of which were enforcing their rights prior to the date of the order for relief, but for the pending FSB Auction, this bankruptcy case would not have been filed. Accordingly, this factor supports dismissal.

e.    *Intent to Frustrate and Delay*

34.    The Debtor filed for Chapter 11 less than Twenty-Four (24) hours before the scheduled public sale of the Property.   This factor favors dismissal.

f.    *Lack of Cash Flow*

35.    The Petition, and its supporting documentation, demonstrate that the Debtor has little to no cash flow.  Indeed, Debtor had $5.00 in cash of the Petition Date.  *Sch. A/B*. And, in answering Part 1 of the SOFA, the Debtor discloses $0.00 in gross revenue from business operations from the beginning of the current fiscal year to the Petition Date, $63,852.20 in gross revenue from business operations for the prior fiscal year, and $0.00 in gross revenue from business operations for the next most prior fiscal year. SOFA, Part 1. That the debtor lacks cash flow is reinforced by its September 2025 MOR [EFC NO. 31], which demonstrates, among other things, that the Debtor had $0.00 in cash and cash reserves as of September 1, 2025, and had $100.00 cash and in cash reserves as of September 30, 2025, despite little to no operational expenses.  This factor counsels in favor of dismissal.

g.    *Inability to Service Debt and Meet Expenses, Including Municipal Taxes*

36.    Where, based on its own schedule and operating reports, the Debtor is not a viable going concern entity, is not cash flowing presently, and has *de minimis* cash and cash equivalents, it is plainly unable to service its existing debt, including property taxes and the cost of insuring the Property, and is further unable to meet current expenses.  On the contrary, the Debtor's schedules reveal unpaid property taxes and storm water charges due to the City of Portland in excess of $20,000.00 as of the Petition Date. This factor cuts in favor of dismissal.

h.    *No Employees*

37.    The Debtor is a limited liability company, which, upon information and belief, has no employees.

38.    The totality of the circumstances, as illuminated by the *PM Cross* Factors, demonstrate conclusively that this case was not filed in good faith.  The Debtor is not in bankruptcy to maximize or preserve the estate's value for the unsecured creditors:  the estate's only asset—the Property —is encumbered in whole or substantial part. This case amounts to nothing more than a thinly veiled effort to frustrate the creditors, while Mr. Eakin continues to speculate that, for unknown reasons, the Property will fetch a sale price that is well above market rate.

39.    Moreover, the Debtor is not generating cash or income from which it can adequately protect the secured lender's interest in the Property.  While the Debtor recently signed, post-petition, a Net Lease with a restaurant operator for a portion of the Premises, the rent reserved under that Lease—$6,000.00 per month for 72 months with no escalators—is, in and of itself, insufficient for the Debtor to operate in the black.[1]  Without cash flow, the Debtor cannot pay its operational expenses, such as the cost of maintaining insurance on the Property or the payment of real estate taxes, cannot make adequate protection payments to its secured lenders as and when required by § 363(e), and lack the funds to cover the costs of case administration.  To the contrary, the Debtor's "desperate resort to filing for bankruptcy on the eve of a … foreclosure [auction], without ongoing operations and [with] inability to service the secured debt, is atypical conduct which constitutes an abuse of the bankruptcy process."  *In re Plaza Antillana, Inc.*, 2014 Bankr. LEXIS 634, *18.

IV.    Cause Exists to Dismiss this Case Under § 1112(b)(4)(A).

40.    Under § 1112(b)(4)(A), the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," is cause for dismissal of a Chapter 11 case.  Section 1112(b)(4)(A)'s first tests "whether, after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively declining

---

[1]    All such rental income appears to be cash collateral of one or more of the secured lenders and, therefore, cannot be used to fund business expenses and/or pay administrative expenses and creditors other than the senior secured lender, absent the lender's consent or an order from the Court.

asset values.  Second, it tests whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time."  Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][a] (16th ed. 2013).

41.    Here, the first prong of the test is satisfied. The Debtor generates insufficient income to pay for its property expenses, such as property insurance and taxes, or make adequate protection payments to it secured lenders. As noted above, the rental income—$6,000.00 per month—is insufficient to carry the loans. The FSB Note payments alone exceed the rental income due and payable by the new tenant.  Where the carrying costs of the Property far exceed its cash flow, the Debtor will continue to operate in the red for the foreseeable future, even if the rental income materializes and funnels through the estate.  That being the case, the first prong of § 1112(b)(4)(A) is satisfied.

42.    The second prong of § 1112(b)(4)(A) asks whether a debtor has a reasonable likelihood of rehabilitation.  To that end, courts assess whether "debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas, confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][a][ii] (16th ed. 2013).

43.    The Debtor's case is not about *reestablishing* a business. Rather, it is about controlling the Property's sale process so as the maximize the proceeds for benefit of Mr. Eakin. Said differently, the Debtor's reorganization is premised on liquidation.  A liquidation plan, by definition, does not qualify as "rehabilitation" for purposes of Section 1112(b)(4)(A).  *Id*.

44.    Moreover, the date by which the Debtor can commence economically sustainable business operations is uncertain at best, as is the source of the additional financing necessary to get

the Debtor to that point. The Property's equity, if any, is earmarked for other purposes, and, in any event, is not a viable source of revitalizing the Debtor's pre-petition business operations, to the extent that those operations existed as of the Petition Date. By its own admission, the Debtor's business operations have been virtually non-existent for the better part of the last three years. *See* SOFA, Part 1 (Debtor's gross revenue from business operation for current fiscal year and the two prior years aggregates $63,852.20).

45.    Debtor, like the debtor in *Plaza Antillana*, "is simply devoid of a[n established] business operation that serves as the basis to structure its reorganization effort." 2014 Bankr. LEXIS 634, *33 (alterations added).  Said slightly differently, the Debtor, which could not service its debt at the outset of the case, and which will not be able to service debt for the foreseeable future, cannot be "rehabilitated"  within the meaning of the second prong of  § 1112(b)(4).  *See In re Creekside Senior Apts., L.P.*, 489 B.R at 62 (quoting *In re Fall*, 405 B.R. 863, 869 (Bankr. N.D. Ohio 2009)). The case should be dismissed.

<u>V</u>.     <u>Unusual Circumstances Militating Against Dismissal Do Not Exist</u>.

46.    This case does not present countervailing circumstances militating against dismissal. While the Code does not define what constitutes "unusual circumstances" for purposes of § 1112(b), such phrase plainly "contemplates conditions that are not common in chapter 11 cases." *In re Pittsfield Weaving Co*., 393 B.R. 271, 274 (Bankr. D. N.H. 2008).  The case at bar is an abusive filing wherein the Debtor seeks only to frustrate the secured creditors' legitimate efforts to realize upon its collateral, so that Mr. Eakin, and entities owned or controlled by him, can reap the benefit, if any, of the Property's sale.

<u>VI</u>.    <u>Dismissal is in the Best Interest of the Creditors and the Estate</u>.

47.    Dismissal is in the best interest of the creditors and the estate.  Upon dismissal, assuming the scheduled value of the Property is substantially accurate, the public sale thereof could

be completed, at which point the secured creditors would be paid in full or substantial part. The appointment of a Chapter 7 Trustee, however, would serve no *bona fide* bankruptcy purpose, given that the Debtor's only asset is encumbered in whole or in substantial part. *See, e.g.*, The Office of the United States Trustees (the "Trustee Handbook"). U.S. Dep't of Justice, Executive Office for U.S. Trustees, Handbook for Chapter 7 Trustees, 4-16 (Oct. 1, 2012) available at: https://www.justice.gov/ust/file/Handbook_for_Chapter_7_Trustees.pdf/download ("Generally, a [chapter 7] trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors.  A secured creditor can protect its own interests in the collateral subject to the security interest.").

THEREFORE, Lyon and Belt ask:

1.      That the Court dismiss this Case for cause, effective immediately;

2.      That the Court commence the hearing on this Motion not later than 30 days after its filing and decide this Motion not later than 15 days after the commencement of such hearing, as required by 11 U.S.C. § 1112(b)(3); and

3.      That they be granted such other and further relief as this Court may deem just and proper.

DATED at Portland, Maine, this November 14, 2025

/s/ Kevin J. Crosman
Kevin J. Crosman
Attorney for Movants
David Lyon and James Belt

JENSEN BAIRD GARDNER & HENRY
Ten Free Street
P.O. Box 4510
Portland, ME  04112
(207) 775-7271

**NOTICE OF MOTION TO DISMISS CASE, OF DEADLINE TO FILE OBJECTIONS TO MOTION, AND OF HEARING DATE**

David Lyon ("Lyon") and James L. Belt ("Belt" and with Lyon, the "Individual Guarantors") has filed papers, including a Motion to Dismiss Case (the "Motion"), and a proposed Order related to that Motion, with the Bankruptcy Court to dismiss the Chapter 11 Bankruptcy Case of Cherished Land, LLC ("CLL") filed on September 11, 2025

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the Motion to Dismiss Case, or if you want the Court to consider your views on the Motion, then you or your attorney must:

1.      On or before December 9, 2025 (the "Objection Date"), file with the Court a written response to the Motion, explaining your position.  This response must be received by the Court either through the Court's electronic filing system (if you are registered to use that system), or by mailing or delivery of the response to the following address:

>       Clerk, U.S. Bankruptcy Court
>       537 Congress Street, 2nd Floor
>       Portland, ME  04101

If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the Objection Date stated above.  You must also mail or deliver a copy of your response to the following at the indicated addresses, or electronically through the Court's electronic filing system (if you or your attorney are registered to use that system):

>   Counsel for Lyon and Belt:

>       Kevin J. Crosman, Esquire
>       Jensen Baird Gardner & Henry
>       Ten Free Street
>       P.O. Box 4510
>       Portland, ME  04112

>   U.S. Trustee:

>       Ann Marie Dirsa, Esq.
>       DOJ-Ust
>       Office of the U.S. Trustee
>       53 Pleasant Street, Suite 2300
>       Concord, NH  03301

Persons, or their attorneys, who are registered with the Court to make electronic filings MUST file their responses with the Court electronically and deliver them electronically to all other parties to whom such delivery is available through the Court's electronic filing system.

2.      Also attend the hearing scheduled to be held at 9:00 a.m. on December 16, 2025, at the Bankruptcy Courtroom, 537 Congress Street, 2nd Floor, Portland, Maine.

**If you or your attorney do not take all of these steps, the Court may decide that you do not oppose the Motion and may enter an order granting that Motion.  In such an instance, the Court may provide that the order granting this Motion will be effective as soon as it is signed by a Bankruptcy Judge.**

Date:  November 14, 2025                    /s/ Kevin J. Crosman
                                           Kevin J. Crosman
                                           Attorney for Movants
                                           David Lyon and James L. Belt

## CERTIFICATE OF SERVICE

        I hereby certify that I have served the above Motion to Dismiss Case and the proposed Order filed with respect to the same, as well as the above Notice of Motion to Dismiss Case, of Deadline to File Objections to Motion, and of Hearing Date, upon the party listed below on November 14, 2025, by mailing a copy of the Motion to that party by first class mail, postage prepaid, at the indicated addresses:

> Cherished Land, LLC
> 64 Auburn Street
> Portland, ME  04103
>
> CP Westbrook
> 64 Auburn Street
> Portland, ME  04103
>
> Cross Insurance Agency
> 2331 Congress Street
> Portland, ME  04101
>
> City of Portland – Storm Water
> 389 Congress Street
> Portland, ME  04101
>
> HR Block Accounting
> One H&R Block Way
> Kansas City, MO  64105

I further certify that, on that same date, all parties listed on the Notice of Electronic Filing were served electronically with copies of the above Motion to Dismiss Case, the proposed Order filed with respect to the same, and the above Notice.

/s/ Kevin J. Crosman
Kevin J. Crosman
Attorney for Movants
David Lyon and James L. Belt